IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2006 AUG 10 P 1: 50

U.S. DISTRICT COURT
DISTRICT OF MASS

SOEUN KIM
  Plaintiff

V.

BEVERLY VEGLAS
KATHLEEN DENNEHY
MARTIN A. MAGNUSSON
JEFFREY MERRILL
CARL MCHATTEN
JANE DEPALMA
JACKIE WEDDLE
JOHN MARSHALL
ABBE E. NELLIGAN
ANN MARIE AUCOIN
TOM NEVILLE
NELSON RILEY
JOHN DOE STARBIRD
  Defendants

CIVIL ACTION
NO. 06 - 11096 - RCL

---

## VERIFIED CIVIL COMPLAINT WITH A JURY DEMAND

### INTRODUCTION

This is an action seeking redress for violation of the federal
and state constitutional rights of Soeun Kim ("Kim") a Maine State
PRISON ("MSP") inmate, currently confined in the Massachusetts
Correctional Institution at Cedar Junction ("MCI-CJ") stemming from:
(A) the denial of Kim's requests for needed legal supplies pens,
paper, and envelopes; (B) the denial of access to Maine statutes;
regulations; rules of courts, and case law and thereby preventing
Kim from effectively prosecuting his criminal appeals and litigating
a conditions of confinement lawsuit; and (C) Defendants exact-cite
system that prevent Kim from obtaining needed Maine constitutional
provisions, statute, rules, regulations and case law for the preparation

drafting, researching, filing and prosecuting a conditions of confinement
lawsuit

## JURISDICTION

This is a civil action under 42 U.S.C. § 1983. This Court has
jurisdiction under 28 U.S.C. § 1331(a) and 1343(3), as well as 28
U.S.C. § 1367(c) to hear Kim's claims alleged herein which arises
under state law. Additionally, Kim respectfully invokes this Court's
diversity jurisdiction under 28 U.S.C. § 1332(a)(1) to suit Maine
State prison officials in the Massachusetts District Court.

## EXHAUSTION OF REMEDIES

1.    Kim filed Maine State prison grievance No.05-MSP-97
on  March 21, 2005; filed classification appeal      on April 1,
2005; and Massachusetts Department of Correction grievance No.15221
on December 21, 2005 and grievance appeal was denied on Fedruary 14,
2006.

## PARTIES

2.    The plaintiff Soeun Kim ("Kim") was incarcerated in
the Maine State Prison ("MSP") in 2004 through April 6, 2005 when he
was transferred to the Massachusetts Department of Correction at Cedar
Junction ("MCI-CJ") at all times during the events described herein.
P.O. Box 100, South Walpole, MA 02071.

3.    Defendant Beverly Veglas ("Veglas") at all relevant times
herein was the Law Librarian at MCI-CJ. She is sued in her individual
and official capacities. P.O. Box 100 South Walpole, MA 02071.

4.    Defendant Kathleen Dennehy ("Dennehy") at all relevant
times herein was the Commissioner of the Massachusetts Department of
Correction ("DOC") and is responsible for the overall operation of
the DOC. She is sued in her individual and official capacities.

3

Dennehy's address is 50 Maple Street, Suite 5, Milford, MA 01757.

5. Defendant Martin A. Magnusson "(Magnusson") at all relevant times herein was the Commssioner of the Maine State Prison system ("MSP"). He is sued in his indiviual and official capacities. 11 State House Station, Augusta, Maine 04333-0111.

6. Defendant Jeffrey Merrill ("Merrill") at all relevant times herein was the warden of MSP and was responsible for the overall operation of MSP. He is sued in his indiviudal and official capacities. 807 Cushing Road, Warren, Maine 04864.

7. Defendant Carl McHatten ("McHatten") at all relevant times herein was an employee of MSP. He is sued in his individual and official capacities. 807 Cushing Road, Warren, Maine 04333-0111.

8. Defendant Jackie Weddle("Weddle ") at all relevant times herein was the Law Librarian at MSP. She is sued in her individual and official capacities. 807 Cushing road, Warren, Maine 04864.

9. Defendant Jane DePalams ("DePalms" at all relevent times herein was the DOC paralegal. She is sued in her individual and official capacities. P.O. Box 9103, Industries Drive, Norfolk, MA 02056.

10. Defendant John Marshall ("Marshall") at all relevant times herein was the Superintendent of MCI-CJ. He is sued in his individual and official capacities. P.O. Box 100 South Walpole, MA 02071.

4

11.    Defendant Abbe E. Nelligan ("Nelligan") at all relevant times herein was an employee of the DOC. She is sued in her individual and offcial capacities. P.O. Box 100 South Walpole, MA 02071.

12.    Defendant Ann Marie Aucoin ("Aucoin") at all relevant times herein was and emplcyee of the DOC. She is sued in her individual and official capacities. P. O. Box 100 South Walpole, MA 02071.

13.    Defendant Tom Neville ("Neville") at all relevant times herein was an employee at MCI-CJ. He is sued in his individual and official capacities. P.O. Box 100 South Walpole, MA 02071.

14.    Defendant Nelson Riley ("Riley") at all relevant times herein was the deputy superintendent at MSP. He is sued in his individual and offcial capacities. 807 Cushing Road, Warren, Maine 04864.

15.    Defendant John Doe Starbird ("Starbird") at all relevant times herein was an employee at MSP. He is sued in his individual and official capacities. 807 cushing Road , Warren, Maine 04864.

16.    All defendants herein were acting at all times herein under the color of state law.

## FACTS

17.    On November 19, 2004 defendants at MSP confiscated all of Kim's legal material/papers and personal property and transferred Kim from general population to the Special Management Unit ("SMU") for reasons unrelated to security and without notice or hearing.

18.    Defendants ignored Kim pleads for and explanation for his removal to SMU. Defendants placed Kim on 24 hours per day cell restriction.

19.   On November 22, 2004 Kim complained to defendant Starbird about his illegal confinement in SMU without explanation or hearing. Defendant Starbird told Kim that he would check into the matter and get back to him.  Defendant Starbird failed to get back to Kim.

20.   On December 5, 2004 Kim written SMU case worker Kevin Burns concerning his illegal SMU confinment and requested a notice and hearing or his release from SMU. Burn failed to reply.

21.   On December 9, 2004 Defendants at MSP transferred Kim from SMU to SMU-B high risk management for reasons unrelated to security and without notice or hearing. Defendants restricted Kim to 23 hours per day cell confinement.

22.   On December 19, 2004 Kim written defendant Starbird and requested a notice of reason for his placement in SMU-B and hearing and opportunity to refute the alleged allegations. Starbird failed to reply.

23.   On December 19, 2004  Kim requested that defendant Starbird provide him with access to the law library or in the alternative provide him with copies of MSP classification regulations, rules of courts and the due process provisions of the Maine Constitution.  Starbird denied Kim's requests.

24.   As a result of defendant Starbird denial of his requests for legal material and supplies(i.e. pens,paper and envelopes) Kim was unable to file a complaint in the Maine courts seeking his release from illegal confinement in SMU/SMU-B high risk management for reasons unrelated to security and without notice or hearing.

6

25.    On February 23, 2005 Kim written investigator Shied and
inquired as to why he was ⟨⟩⟨⟩ being confined in SMU-B after his
office had prepared and filed a report clearing him of any wrongdoing.
Investigator Shied failed to reply.

26.    On February 28, 2005 Kim written case worker James "CHICO"
Hernandez complaining about his illegal confinement and requested
that he either be provided with a hearing or released from SMU-B.
Kim received no reply.

27.    On March 4, 2005 defendant Starbird and the MSP Special
Management Unit Team Classification board ("SMUT") recommended that
Kim be released to general population.

28.    Defendants Riley and McHatten overruled SMUT recommendation
for the stated reason "Do not concur".

29.    On March 8, 2005 Kim written defendant Riley and requested
an explanation for his confinement in SMU-B high risk management and
the reason for his decision overruling the SMUT recommendation. Riley
replied and stated that his reason for overruling the SMUT recommendation
"I am not convinced that you would stay out of trouble if released to
general population."

30.    On March 24, 2005 Kim's family retained the service of
private investigator Bethany Angle and thereafter Ms. angle written
defendant Riley inquiring of the reasons for Kim's confinement in the
high risk unit.    Riley failed to reply.

31.    On April 1, 2005 Kim submitted a timely classification
appeal to defendant Riley and requested a notice of reasons for his
confinement in SMU-B. Riley failed to reply.

32.    On April 6, 2005 Defendnats at MSP transferred Kim to MCI-CJ without notice or hearing and for reasons unrelated to security.

33.    Upon his arrival at MCI-CJ the Defendants at MCI-CJ immediately confined Kim in a lockdown unit under 24 hours per day cell restrictions and confiscated all of Kim's personal items.

34.    On April 7, 2005 Kim asked the Orientation Unit ("OU") staff for legal supplies(i.e. pens paper and envelopes) and a Maine Lawyer's Diary for the expressed purposes of writing his attorney and family in Maine to let them known his whereabout. The OU staff informed Kim that he had to get legal supplies from the prison law library.

35.    On April 8, 2005 Kim written MCI-CJ law librarian defendant Veglas and explained that he was recently transferred from MSP and that he was on awaiting action status and requested a pen, typing paper and envelopes for the express purposes of writing his attorney in Maine to let him know what's going on and to request that he file for an injunction requiring his return to Maine. Defendnat Veglas failed to reply.

36.    On April 22, 2005 Kim written defendant Dennehy concerning his illegal transfer to MCI-CJ and conditions of confinement and requested his return to Maine.  On May 13, 2005 defendant Dennehy responded and told Kim to direct all of his concerns to MSP.

37.    On April 27, 2005 defendants at MCI-CJ transferred Kim from OU in general population to the Departmental Segregation Unit ("DSU") without a referral letter, notice or hearing in direct

8

violation of 103 CMR 421.00.

38. On May 24, 2005 defendants at MCI-CJ permanently confiscated all of Kim's personal property that he had been permitted to possess in the MSP for reasons unrelated to security.

39. In June, 2005 defendant Veglas denied Kim's requests for access to Maine statutes, prison regulations, rules, rules of courts, Lawyer's Diary;constitution, decisional law and citator. Defendant Veglas told Kim that he would have obtain the requested material from Maine.

40. On July 12, 2005 Kim submitted and inmate request to staff member, requesting a copy of the letter prepared by the MSP citing the reason for his transfer from Maine to MCI-CJ.

41. On July 19, 2005 the defendants at MCI-CJ denied Kim's request for a copy of the notice of reason for his transfer from MSP to MCI-CJ.

42. On July 22, 2005 Kim's friend Ms. Bethany Angle written defendant Riley a letter alleging among other things that he had retaliated against Kim because of her prior letter of complaint and reminded Riley of Kim's conditions of confinement at MCI-CJ and requested that Kim be returned to MSP so that he may receive visits and adequate programs.

43. On august 2, 2005 defendant Riley written Ms. Angle a letter stating that he could not discuss the specific of Kim's case without a signed release from Kim, however, defendant Riley agreed to discuss his reasons for transferring Kim from MSP to MCJ-CJ

and that Kim was transferred to MCI-CJ for security reasons and that he would not recommend that Kim be returned to MSP. Defendant Riley further stated that "Kim was not transferred to Massachusetts as punishment as suggested in your letter."

44.    On August 9, 2005 Kim requested that the MC -CJ officials return him to Maine and was told that the decision was for Maine to make.

45.    On August 11, 2005 Kim submitted a legal supply request to defendant Veglas requesting pen, paper and envelopes for the expressed purposes of writing MSP to request his return. Defendant Veglas failed to reply. Kim was unable to write a letter to defendant Magnusson requesting his return to MSP.

46.    On September 12, 2005 Kim sought legal assistance from Massachusetts Correctional Legal Services ("MCLS"). MCLS informed Kim that they could not assist him because he was a Maine State prisoner.

47.    On or about October 19, 2005 Kim requested assistance from Northeastern Prisoner's Assistance Project ("NEPAP"). NEPAP informed Kim that they could not assist him because he was a Maine State prisoner.

48.    On November 21, 2005 Kim sought assistance from Harvard Prison Legal Assistance Project ("PLAP"). PLAP informed Kim that they could not assist him because he was a Maine State prisoner.

49.    On December 2, 2005 Kim    complained to MCI-CJ officials regarding their deprivation of earned good time credits for work and programs from April, 2005 through December, 2005.

11

56.    On  December 23, 2005 Kim written to the Cumberland
Legal Aid Clinic in Portland, Maine seeking legal assistance with
legal needs for Maine decisional law, rules, prison rules and other
material.

57.    On December 26, 2005 Kim appealed defendant Aucoin's
denial of grievance No.15221 to defendant Marshall.(Exhibit "A").

58.    On December 28, 2005 Kim complained to defendant Magnusson
and requested that he order his staff to provide him with access to
needed Maine legal material while he confined at MCI-CJ or provide
him with access to a person trianed in the law, so that he may draft
and file a conditions of confinement lawsuit challenging his illegal
transfer.

59.    On January 11, 2006 defendant McHatten denied Kim's
requests and informed Kim that he'll be provided necessary legal
materials provided that he follow the established process and that
the librarian at MCI-CJ must contact the librarian at the Maine
State Prison library and request the material that Kim needed.

60.    On January 19, 2006 Kim received a response from
Cumberland Legal Aid denying his requests for legal assistance the
because of his confinement in a Masschusetts prison, the letter
was written by Administrative Assistant Samantha Philbrick.

61.    On January 28, 2006 Kim written to defendant DePalma
requesting access to needed Maine laws and legal reference
material, including Maine citators for obtaining the cites for

12

needed legal material for drafting and filing a conditions of
confinement lawsuit.

62.     On January 31, 2006 defendant Weddle informed Kim that
in order for him to obtain needed Maine legal material, he provide
her with the "exact citation" of for all requested legal material.(EX."B").

63.     On February 7, 2006 defendant DePalma intsructed Kim
that he must direct his Maine legal needs, including his needs for
a Maine citator to defendant Weddle.

64.     On February 10, 2006 Kim written to defendant Weddle
and informed her that MCI-Cedar Junction refused to provide him
with access to Maine Laws and citators to obtain the "specific
cites and requested that Weddle provide him with among other
things Maine citators. (Exhibit "A").

65.     Defendants Dennehy and Marshall confined Kim in 24
hours per day cell restriction in a windowless cell within the East
Wing Section of MCI-CJ in the windowless Departmental Segregation
Unit(DSU) cell blocks without adequate ventilation for fresh air
from April 6, 2005 through April 27, 2005 for reasons unrelated to
security and without due process.

66.     Defendants Dennehy and Marshall confined Kim in 23 hours
per day cell restriction in a windowless cell within the East Wing
DSU windowless cell blockwithout adequate ventilation for fresh air
from April 27, 2005 through October, 2005 in violation of the procedures
set forth in 103 CMR 421 and for reasons unrelated to security. On April
10, 2006 Kim filed grievance No. 17396 seeking access to Maine citators
and legal reference materials for obtaining exact cites.

50.    On December 15, 2005 defendant Neville denied Kim's requested for earned good time credits for working and programs participation and instructed Kim to direct his questions concerning earned good time credits to the MSP.

51.    On December 13, 2005 Kim complained to defendant Marshall that he was being denied access to needed Maine legal material and that the denial was preventing him from drafting and filing a conditions of confinement lawsuit challenging his illegal transfer and retalatory transfer.

52.    On December 21, 2005 defendant Nelligan denied Kim's requests for needed Maine legal material and instructed Kim to direct his legal material requests to defendant Depalma.

53.    On December 21, 2005 Kim complained to defendant Marshall regarding the confiscation of his personal property and legal material and defendant Veglas refusal to provide him with access to needed Maine prison regulations, rules, statutes, rules of courts, grievance regulations, constitution, citator and Lawyer's Diary and requested that either he order his staff to provide him with access to needed Maine legal material or in the alternative transfer him to a Maine State prison law library in accordance with 103 CMR 478.11(3).Defendant Marshall failed to reply.

54.    On December 21, 2005 Kim filed grievance No. 15221 regarding defendants at MCI-CJ refusal to provide him with access to needed Maine legal material, including a Maine citator.(Exhibit "A").

55.    On December 22, 2005 defendant Aucoin denied Kim's request for needed Maine legal material, including request for a Maine citator and instructed Kim to direct his legal needs to MSP.

56.    On December 23, 2005 Kim written to the Cumberland Legal Aid Clinic in Portland, Maine seeking legal assistance with legal needs for Maine decisional law, rules, prison rules and other material.

57.    On December 26, 2005 Kim appealed defendant Aucoin's denial of grievance No.15221 to defendant Marshall.(Exhibit "A").

58.    On December 28, 2005 Kim complained to defendant Magnusson and requested that he order his staff to provide him with access to needed Maine legal material while he confined at MCI-CJ or provide him with access to a person trianed in the law, so that he may draft and file a conditions of confinement lawsuit challenging his illegal transfer.

59.    On January 11, 2006 defendant McHatten denied Kim's requests and informed Kim that he'll be provided necessary legal materials provided that he follow the established process and that the librarian at MCI-CJ must contact the librarian at the Maine State Prison library and request the material that Kim needed.

60.    On January 19, 2006 Kim received a response from Cumberland Legal Aid denying his requests for legal assistance because of his confinement in a Masschusetts prison, the letter was written by Administrative Assistant Samantha Philbrick.

61.    On January 28, 2006 Kim written to defendant DePalma requesting access to needed Maine laws and legal reference material, including Maine citators for obtaining the cites for

needed legal material for drafting and filing a conditions of
confinement lawsuit.

62.     On January 31, 2006 defendant Weddle informed Kim that
in order for him to obtain needed Maine legal material, he provide
her with the "exact citation" of for all requested legal material.(EX."B").

63.     On February 7, 2006 defendant DePalma intsructed Kim
that he must direct his Maine legal needs, including his needs for
a Maine citator to defendant Weddle.

64.     On February 10, 2006 Kim written to defendant Weddle
and informed her that MCI-Cedar Junction refused to provide him
with access to Maine Laws and citators to obtain the "specific
cites and requested that Weddle provide him with among other
things Maine citators. (Exhibit "A").

65.     Defendants Dennehy and Marshall confined Kim in 24
hours per day cell restriction in a windowless cell within the East
Wing Section of MCI-CJ in the windowless Departmental Segregation
Unit(DSU) cell blocks without adequate ventilation for fresh air
from April 6, 2005 through April 27, 2005 for reasons unrelated to
security and without due process.

66.     Defendants Dennehy and Marshall confined Kim in 23 hours
per day cell restriction in a windowless cell within the East Wing
DSU windowless cell blockwithout adequate ventilation for fresh air
from April 27, 2005 through October, 2005 in violation of the procedures
set forth in 103 CMR 421 and for reasons unrelated to security. On April
10, 2006 Kim filed grievance No. 17396 seeking access to Maine citators
and legal reference materials for obtaining exact cites.

13

## CLAIMS FOR RELIEF

### COUNT I

### ( EXACT CITATION SYSTEM )

67.    The action of Defendants Weddle, McHatten, Riley, Merrill, Starbird and Magnusson of requiring Kim to provide them in advance of receiving any Maine legal materials, the exact cite for all requested and needed Maine statutes, prison regulations, rules, court rules, decisional law and other needed Maine legal materials, without providing Kim with access to a "Maine citator" and basic legal research materials deprived Kim of his rights to and adequate law library and thereby prevented Kim from drafting and filing a conditions of confinement lawsuit challinging his retalatory transfer from Maine State Prison to the Massachusetts State Prison at MCI-CJ in violation of the First, Sixth and Fourteenth Amendments of the United States Constitution.

### COUNT II

### ( DENIAL OF REQUEST FOR ACCESS TO MAINE CITATOR)

68.    The failure of defendants Veglas, Dennehy, Marshall, Nelligan, Aucoin and Neville to provide Kim with access to a "Maine citator", combined with defendants Weddle,McHatten,Riley, Merrill, Starbird and Magnusson requirements that Kim provide them with the exact cite for requested and needed Maine legal materials deprived Kim of his rights to an adequate law library and prevented Kim from drafting and filing a condition of confinement lawsuit challenging his retalatory transfer from the Maine State Prison to the

14

Massachusetts State Prison at MCJ in violation of the First,Sixth and
Fourteenth Amendments of the United States Constitution.

## COUNT III

## ( 24 HOURS PER DAY CELL RESTRICTION IN A WINDOWLESS CELL)

69.     The actions of Dennehy, Neville and Marshall of confining
Kim in 24 and 23 hours per day  cell restriction in a windowless cell
without adequate ventilation and fresh air within Departmental Segregation
DSU windowless cell block from April 6, 2005 through October, 2005
constitute a deliberate indifference to Kim's basic human needs and
thereby constitute cruel and unsual punishment in violation of the
Eight Amendment of the United States Constitution.

## RELIEF REQUESTED

WHEREFORE, Kim requests that the court grant the following
relief:

A.     Issue a preliminary and permanent injunction requiring
defendants forthwith to provide him with access to Maine citator,
legal materials as needed, confidential photocopying,ink pen, typing
paper, lined writing paper, envelopes(i.e. both No.10 and 10 x 13)
and to comply with 103 CMR 478.11(3) and transport him to the Maine
State prison law library for the express purposes of preparing and
filing legal pleadings in the Maine courts(i.e. federal and state).

B.     Issue a declaratory judgment stating that Defendants
exact citation system violates Kim's rights under the First,Sixth
and Fourteenth Amendments of the United States Constitution.

C.     Issue a declaratory judgment that Defendants confinement
of Kim in 24 and 23 hours per day cell restriction in a windowless
cell and cell block violate the Eight Amendment.

C.      Issue and injunction oredring defendants Weddle,McHatten,
Riley, Merrill, Starbird and Magnusson or their agents and successors
in office to:

> 1.      Immediately provide Kim with access to a Maine
> citator and needed legal materials and supplies and
> confidential photocopying as needed;
>
> 2.      Immediately arrange for Kim to be transported to
> the Maine State prison law library in accordance with
> 103 CMR 478.11(3) for  the expressed purposes of researching,
> drafting and filing of legal pleadings in the Maine courts
> (i.e. federal and state); and
>
> 3.      Prohibit defendnats from confining Kim for
> any part of a 24 hour day in a windowless cell without
> adequate ventilation and fresh air.

D.      Enter injunctive relief prohibiting defendants and their
agents and successors in office from retaliating against Kim for
exercising his rights and filing this lawsuit.

E.      Award compensatory damages.

F.      Award puntive damages.

G.      Award attorney fees and costs.

H.      Grant such other relief as it may appear just and equitable.

I.      Kim demands a jury trial on all issues so triable.


June  ,  2006                    _____
                                 Soeun Kim
                                 Box 100
                                 South Walpole, MA 02071